1

2

3

4

5

6                  **IN THE UNITED STATES DISTRICT COURT**

7                     **FOR THE DISTRICT OF ARIZONA**

8   **ANDREW J. ALLERDICE,**            )
                                        )
9            **Petitioner,**            )
                                        )
10           **v.**                     )   CIV 07-8049 PCT NVW (MEA)
                                        )
11  **DORA B. SCHRIRO and**             )         SECOND
    **ARIZONA ATTORNEY GENERAL,**       )   REPORT AND RECOMMENDATION
12                                      )
             **Respondents.**           )
13  _____    )

14  **TO THE HONORABLE NEIL V. WAKE:**

15           **I Procedural background of federal habeas petition**

16           Petitioner filed a *pro se* petition seeking a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254 on July 9, 2007.

18  Respondents filed an Answer to Petition for Writ of Habeas

19  Corpus ("Answer") (Docket No. 10) and Petitioner filed a reply

20  to the answer to his petition.  See Docket No. 14.

21           In a Report and Recommendation filed December 20, 2007,

22  the undersigned concluded, *inter alia*, that the state courts did

23  not err in denying Petitioner's claim that his right to due

24  process was violated by his trial counsel's agreement to certain

25  stipulations regarding the admission of evidence.  See Docket

26  No. 15.  In an order filed January 29, 2008, the Court declined

27  to adopt that portion of the Report and Recommendation

28  addressing Petitioner's due process claim.  See Docket No. 20.

The matter was re-referred to the undersigned for a new Report and Recommendation analyzing Petitioner's due process claim and the effect, if any, of Petitioner's objection to his attorney's stipulations in light of United States v. Plitman, 194 F.3d 59 (2d Cir. 1999), United States v. Stephens, 609 F.2d 230 (5th Cir. 1980), Wilson v. Gray, 345 F.2d 282 (9th Cir. 1965), and Cruzado v. Puerto Rico, 210 F.2d 789 (1st Cir. 1954).

## II  Factual background

In April of 2000 Petitioner was charged by indictment with two counts of forgery and one count of fraudulent schemes, in Mohave County Superior Court docket number CR-2000-0412. Answer, Exh. L.  On January 5, 2001, Petitioner was charged by indictment with one count of fraudulent schemes, six counts of forgery, and one count of theft, in Mohave County Superior Court docket number CR-2001-0019.  Id., Exh. M.  The indictment alleged the crimes were committed from February through April of 2000 in Kingman and Lake Havasu, Arizona.  Id., Exh. L & Exh. M.

In September of 2001 the trial court granted the state's motion to consolidate these two cases and ordered that all of the forgery charges be encompassed in a single charge of fraudulent schemes.  Id., Exh. A.[1]  At that time the Mohave County Superior Court granted the state's motion to allege at least two historical prior felony convictions and to allege Petitioner had committed the charged offenses while on parole.

---

[1] Petitioner was charged in Mohave County in two other criminal cases in 2001, docket numbers CR-2001-000580 and CR-2001-000581.  See Answer, Exh. A.

Id., Exh. A.   The state also charged Petitioner had committed the charged offenses while on pretrial felony release.   Id., Exh. T.

At trial, the prosecution asserted Petitioner had created at least three personal bank accounts using different Social Security Numbers and at least one other name, with the intention of acquiring funds by illegal means.   Id., Exh. J. The state also alleged Petitioner had cashed or presented checks drawn on business bank accounts which accounts were not held by legitimate or operational businesses, with the intent to defraud.   Id., Exh. J.

Respondents aver:

> Following extensive review and analysis of hundreds of pages of bank and financial institution records, as well as examination by a defense handwriting expert[], Petitioner's counsel and the prosecutor entered into stipulations regarding the foundation and admissibility of several defense and State exhibits.

Answer at 3.

On July 1, 2002, the Mohave County Superior Court conducted a trial management and case status hearing.   Id., Exh. G.   Petitioner was present at this hearing.   Id., Exh. G.   At the hearing, the prosecution and defense discussed stipulations regarding the admission of evidence, i.e., checks and financial records.   Id., Exh. G (passim).   The discussion also involved, inter alia, the prosecution's stipulation that some of the checks were signed in the name of a real individual other than Petitioner, i.e., a Mr. Pisciotta.   Id., Exh. G at 4-6 & Exh. H-

-3-

2 at 5-7 & 11-17.

On or about July 8, 2002, the date Petitioner's trial began, Petitioner's counsel formally entered into the stipulations with regard to the admissibility of and foundation for the introduction into evidence of at least thirty checks and financial records.    Id., Exh. H-1.    The stipulations are provided at Exhibit R to Respondents' Answer to the Petition at Docket No. 10.    Some of the stipulations provide for the foundation and admissibility of the fact that, on a certain date, Petitioner had presented a certain check at a particular bank and cashed or deposited the check.    Some of the stipulations provide for the foundation and admissibility of the fact that, on a certain date, Petitioner had presented a certain check at a retail or grocery store in payment for goods.    The stipulations included the fact that Petitioner had presented checks drafted on a bank and business account which the bank said did not exist.

On the date the trial began, defense counsel stated: "And ... I would put on the record Mr. Allerdice is not in agreement with these stipulations, but it's not a decision he gets to make as it's a tactical strategic decision."    Id., Exh. H-1 at 13.    Petitioner then stated: "these stipulations are admission to guilt.    These aren't just stipulating to minor facts.    It's saying that I was at the location of the crime, that I actually committed the crime. ... it puts me there and it says that I did it."    Id., Exh. H-1 at 13-14.

-4-

The trial court stated:

> Well, that may be how you interpret them, but I don't think that the stipulation actually reaches that far because there are more elements to what the offenses would be.  So I would suspect that it is in the nature of a tactical strategic decision that may have been made by your attorney.  Attorneys get to decide how to formulate evidence decisions.

Id., Exh. H-1 at 14.  Petitioner then stated:

> All right.  I respect that.  But it goes down to nobody said that I was at this location. ... And by saying that I passed the check without even being I.D.ed or the police department even bothering to interview the people that accepted the check is the whole reason why I never accepted a plea bargain from the government.
> And by me admitting to being in these places and committing these, I'm saying that I'm waiving any constitutional right to consultation (sic) with my accusers.

Id., Exh. H-1 at 14.

The Mohave County Superior Court then reiterated that "what this stipulation is there still is a missing element." Id., Exh. H-1 at 15.[2]  Petitioner then stated that the

---

[2] Arizona's fraudulent schemes statute requires the prosecution to prove "not only (1) a scheme or artifice to defraud, but also that (2) defendant knowingly and intentionally participated in it and that (3) it was a scheme for obtaining money or property by means of 'false or fraudulent pretenses, representations or promises.'" Arizona v. Johnson, 179 Ariz. 375, 377, 880 P.2d 132, 134 (1994), quoting Arizona v. Haas, 138 Ariz. 413, 419, 675 P.2d 673, 679 (1983).  See also Ariz. Rev. Stat. Ann. § 13-2310(A) (2001 & Supp. 2007) ("Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony." (emphasis added)).
Additionally, Arizona's statutory scheme provides:
A person commits forgery if, with intent to defraud, the person:
1. Falsely makes, completes or alters a written instrument; or

-5-

stipulations narrowed the issues for the jury "too far." Id., Exh. H-1 at 15. The trial court then asked Petitioner if he was certain he wanted to have a jury trial rather than "enter into an agreement with the State." Id., Exh. H-1 at 15. Petitioner then stated: "No, you're right. And I wouldn't accept a plea agreement because I entered a not guilty plea because I'm not guilty." Id., Exh. H-1 at 15. Petitioner also stated that he had only been belatedly informed of the stipulations, on July 3, 2002. Id., Exh. H-1 at 17.

The defense asserted at trial by Petitioner's counsel was that Petitioner was attempting to begin a legitimate business and that he had written and presented the checks in good faith, not knowing there were insufficient funds in the accounts. Id., Exh. H-2, 37-42 & Exh. J. Petitioner also argued that he had been victimized by others, including Mr. Pisciotta, with regard to the insufficient funds to cover the checks. Id., Exh. H-2, 37-42 & Exh. J.

Petitioner did not testify at his trial. Petitioner's counsel moved for a directed verdict at the close of the prosecution's case, arguing there was insufficient evidence of intent with regard to the forgery and fraudulent schemes

---

2. Knowingly possesses a forged instrument; or
3. Offers or presents, whether accepted or not, a forged instrument or one that contains false information.

Ariz. Rev. Stat. Ann. § 13-2002(A)(2001 & Supp. 2007). The intent to defraud may be presumed from the possession of five or more forged instruments. See id. § 13-2002(B). The intent to defraud may not be inferred "from the unauthorized use of another's name alone and the obtaining of money by the use of the same." Arizona v. Maxwell, 95 Ariz. 396, 399, 391 P.2d 560, 562 (1964).

1    charges, which motion was denied.   Id., Exh. H-2 at 79-84.

2         A jury found Petitioner guilty on all of the counts

3    charged.   Id., Exh. J.   On August 28, 2002, Petitioner was

4    sentenced to, inter alia, a presumptive term of 17.75 years

5    imprisonment for fraudulent schemes and a presumptive term of

6    13.25 years pursuant to his conviction for theft.   Id., Exh. K.

7    All of the sentences were to be served concurrently to each

8    other.   Accordingly, Petitioner challenges his convictions and

9    sentences resulting in an aggregate sentence of 17.75 years

10   imprisonment.

11        Petitioner took a direct appeal of his convictions and

12   sentences.   Id., Exh. S.   Petitioner was represented by

13   appointed counsel in his direct appeal; appellate counsel was a

14   different person than trial counsel.   Id., Exh. S.   Petitioner

15   argued the sentencing court erred by finding a specific federal

16   conviction was a prior felony conviction pursuant to Arizona

17   law, and also asserted the trial court erred in instructing the

18   jury.   Id., Exh. S.   In a decision issued August 12, 2003, the

19   Arizona Court of Appeals rejected Petitioner's claims and

20   affirmed his convictions and sentences.   Id., Exh. T.

21   Petitioner did not seek review of this decision by the Arizona

22   Supreme Court.

23        Petitioner filed a timely state action for post-

24   conviction relief pursuant to Rule 32, Arizona Rules of Criminal

25   Procedure, in the Mohave County Superior Court in October of

26   2003 and was appointed counsel to represent him in those

27   proceedings.   Id., Exh. U.   Petitioner asserted in his Rule 32

28

proceedings that his trial counsel's performance was unconstitutionally ineffective. Id., Exh. V. Petitioner argued trial counsel did not adequately subject the case against Petitioner to "adversarial testing," i.e., that counsel erred by entering into the stipulations. Id., Exh. V. Petitioner's post-conviction counsel presented this as a claim to the state courts as one raised pursuant to United States v. Cronic, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984).

In a decision issued June 9, 2004, the Arizona trial court denied Petitioner's claims for post-conviction relief. Id., Exh. X. The court concluded counsel's decisions regarding the stipulations comprised trial strategy and did not, accordingly, present a colorable claim for relief. Id., Exh. X. Petitioner sought review of this decision by the Arizona Court of Appeals. Id., Exh. Y. The Arizona Court of Appeals affirmed the trial court's decision in a decision issued July 13, 2005. Id., Exh. Z.

In his federal habeas petition filed July 9, 2007, Petitioner alleged he was deprived of his Sixth Amendment rights to a fair trial and the effective assistance of counsel and that he was deprived of his right to due process of law pursuant to the Fourteenth Amendment and that his Fifth Amendment Miranda rights were violated during his criminal proceedings. Respondents countered that the only claim which was properly exhausted, the Arizona state court's decision that trial counsel's performance was not deficient, was not contrary to nor

an unreasonable application of federal law.[3]

In the first Report and Recommendation the undersigned concluded the Arizona state courts, acting in Petitioner's Rule 32 proceedings, did not err by concluding Petitioner's constitutional rights were not violated by his trial counsel's stipulation as to the admissibility of evidence. However, the undersigned erred in stating Petitioner had not objected to the stipulations.

Petitioner objected to the undersigned's Report and Recommendation, emphasizing he *had* objected to the stipulations at the time of his trial. See Docket No. 16 at 2. In his objections Petitioner avers: "he did not know of the full stipulations to the day of trial. Even if the petitioner wanted to enter into a last minute plea, trial counsel prevented this by the stipulations." Id. In his objections to the Report and Recommendation Petitioner cites Clemmons v. Delo, 124 F.3d 944, 956 (8th Cir. 1997), for the proposition that his right to due process was violated because his counsel entered into the stipulations. Id. at 3. Petitioner reiterates his claim that his counsel was ineffective and that he was "stripped of his rights and left defenseless..." Id. at 4. Petitioner contends the stipulations were the functional equivalent of a guilty plea because the stipulations prevented him from testifying at his

---

[3] Petitioner had a second, ultimately successful, second action for post-conviction relief pending in the Arizona state courts from August 30, 2005, until May 31, 2007, regarding his presentence incarceration credit. Accordingly, Respondents allow that the statute of limitations was tolled during this period and the habeas petition was timely filed.

trial.  <u>Id.</u> at 5-6.

In response to the Report and Recommendation and Petitioner's objections thereto, Respondents contend the fact Petitioner objected to the stipulations is not dispositive of his habeas claim because the stipulations entered into by counsel were not the functional equivalent of a guilty plea, a necessary prerequisite to relief based on this type of claim. <u>See</u> Docket No. 19 at 2.  Respondents argue that defense counsel's "tactical decision to stipulate to factual matters the State would easily prove, while aggressively maintaining Petitioner's innocence and challenging the only element at issue, [Petitioner's intent], is a far cry from the '"prima facie" bench trial' that amounted to a guilty plea in <u>Brookhart</u>."  <u>Id.</u> at 4, citing <u>Nixon v. Florida</u>, 543 U.S. 175, 182-83, 125 S. Ct. 551, 557-58 (2004).[4]  Respondents assert that, even if a petitioner's trial counsel had conceded "guilt" with regard to an element of a crime, that act did not rise to the level of a constitutional violation because it did not relieve the state from persuading a jury of Petitioner's guilt of the crime itself beyond a reasonable doubt.

---

[4]  In <u>Nixon</u> the United States Supreme Court granted certiorari "to resolve an important question of constitutional law, i.e., whether counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt in a capital trial automatically renders counsel's performance deficient, and whether counsel's effectiveness should be evaluated under <u>Cronic</u> or <u>Strickland</u>."  <u>Florida v. Nixon</u>, 543 U.S. 175, 186-87, 125 S. Ct. 551, 560 (2004).

1     **III Analysis**

2     **Standard of review**

3          Respondents allow that Petitioner's claim was exhausted

4    in the state courts as a claim his Sixth Amendment rights were

5    violated.  The Court may not grant a writ of habeas corpus to a

6    state prisoner on a claim adjudicated on the merits in state

7    court proceedings unless the state court reached a decision

8    contrary to clearly established federal law or the state court's

9    decision was an unreasonable application of clearly established

10    federal law.  See 28 U.S.C. § 2254(d) (1994 & Supp. 2007);

11    <u>Panetti v. Quarterman</u>, 127 S. Ct. 2842, 2858 (2007); <u>Carey v.</u>

12    <u>Musladin</u>, 127 S. Ct. 649, 653 (2006); <u>Rompilla v. Beard</u>, 545

13    U.S. 374, 390, 125 S. Ct. 2456, 2467-68 (2005); <u>Cook v. Schriro</u>,

14    516 F.3d 802, 816 (9th Cir. 2008).

15          United States Supreme Court holdings at the time of the

16    state court's decision are the source of "clearly established

17    federal law" for the purpose of federal habeas review.  <u>Williams</u>

18    <u>v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000);

19    <u>Barker v. Fleming</u>, 423 F.3d 1085, 1093 (9th Cir. 2005), <u>cert.</u>

20    <u>denied</u>, 547 U.S. 1138 (2006).  The Court must decide whether the

21    United States Supreme Court has "clearly established" the point

22    of law Petitioner relies upon as a basis for habeas relief by

23    examining the holdings of the Supreme Court, rather than the

24    opinions of the lower courts or the Supreme Court's dicta.  <u>See</u>

25    <u>Carey</u>, 127 S. Ct. at 653.

26          Unless United States Supreme Court precedent has

27    clearly established a rule of law, the writ will not issue based

28

on a claimed violation of that rule, see Alvarado v. Hill, 252 F.3d 1066, 1069 (9th Cir. 2001), because federal courts are "without the power" to extend the law beyond Supreme Court precedent. See Dows v. Wood, 211 F.3d 480, 485 (9th Cir. 2000). Accordingly, if the United States Supreme Court has not addressed the issue raised by Petitioner in its holdings, the state court's adjudication of the issue cannot be contrary to, or an unreasonable application of, clearly established federal law. See Stenson v. Lambert, 504 F.3d 873, 881, citing Kane v. Espitia, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006). If the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. Cook, 516 F.3d at 818, quoting Carey, 127 S. Ct. at 654; Crater v. Galaza, 491 F.3d 1119, 1123 (9th Cir. 2007), petition for cert. filed (Feb. 11, 2008) (No. 07-9375).

If the Court determines that the state court's decision was contrary to clearly established law, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Frantz v. Hazey, 513 F.3d 1002, 113-15 (9th Cir. 2008). See also Larson

v. Palmateer, 515 F.3d 1057, 1061-62 (9th Cir. 2008).[5]

Additionally, with regard to his right to federal habeas relief, Petitioner bears the burden of proving his constitutional rights were violated. See, e.g., Cook, 516 F.3d at 816.

**Petitioner's claim**

Petitioner's claim was exhausted in the state courts as one asserting Petitioner's Sixth Amendment right to the effective assistance of counsel and a fair trial was violated because his counsel failed to subject the prosecution's case to "adversarial testing". See Answer, Exh. V. Post-conviction counsel argued that Petitioner had been "constructively" denied counsel, citing Haynes v. Cain, 298 F.3d 375 (5th Cir. 2002). Petitioner's post-conviction counsel argued that the United States Supreme Court had created "an exception to the Strickland rubric" in cases where "counsel utterly fails" to subject the state's case to adversarial testing, citing United States v.

_____

[5]

Under AEDPA, a federal court is permitted to grant habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). ... If the state court reaches the merits without providing reasoning for us to review, however, "we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir. 2007) (internal quotation marks omitted). Larson v. Palmateer, 515 F.3d 1057, 1061-62 (9th Cir. 2008).

-13-

Cronic, 466 U.S. 648, 104 S. Ct. 2039 (1984).[6]

Post-conviction counsel argued the Cronic test was satisfied because Petitioner's trial counsel had effectively conceded Petitioner's guilt by entering into the stipulations. Post-conviction counsel maintained that, where trial counsel "does not put the state to their burden," prejudice in the proceedings to the defendant's detriment is presumed, satisfying the second prong of the Strickland ineffective assistance of counsel test. Counsel alleged Petitioner's trial counsel had "assented to the basis of the state's accusations; while in hopes that the jury would believe that his client [was] implausibly obtuse." Id., Exh. V.

In the first Report and Recommendation, the undersigned concluded the claim was not properly construed as one alleging a violation of Petitioner's rights pursuant to the Cronic doctrine because the Supreme Court has clarified that Cronic

---

[6]Ordinarily a claim that the defendant was deprived of his Sixth Amendment right to the effective assistance of counsel would be analyzed pursuant to the two-part test stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), requiring a showing of deficient performance by counsel which was prejudicial to the defendant. The Supreme Court held in Cronic that when the "surrounding circumstances" justified a "presumption of ineffectiveness", a habeas petitioner had made a showing of entitlement to relief "without inquiry into counsel's actual performance at trial". 466 U.S. 648, 662, 104 S. Ct. 2039, 2048 (1984).

> [T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated...

Id., 466 U.S. at 658, 104 S. Ct. at 2046.

-14-

applies only where defense counsel's failure to test the prosecution's case was complete, rather than where counsel was alleged to have made "isolated missteps" during the proceeding. See Bell v. Cone, 535 U.S. 685, 696-97, 122 S. Ct. 1843, 1850-51 (2002); Barrow v. Uchtman, 398 F.3d 597, 603 n.4 (7th Cir. 2005).[7] When assessing whether the state court had erred in concluding Petitioner's constitutional rights were not violated by counsel's entering into the stipulations, the undersigned analyzed Petitioner's claim as one brought pursuant to the doctrine of Brookhart v. Janis, 384 U.S. 1, 86 S. Ct. 1245 (1966).

Because the undersigned found that the state court had, in effect, applied the wrong governing principle to Petitioner's claim that his counsel had improperly waived his rights by entering into the stipulations by applying Cronic instead of Brookhart, the undersigned impliedly concluded the state's decision was contrary to or an unreasonable application of

---

[7]
        [T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate. []. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted-even if defense counsel may have made demonstrable errors-the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated

United States v. Cronic, 466 U.S. 648, 656-57, 104 S. Ct. 2039, 2045-46 (1984) (internal citations and quotations omitted)..

federal law.  See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) ("A state court decision is 'contrary to' federal law if it 'failed to apply the correct controlling authority from the Supreme Court.'", quoting Shackleford v. Hubbard, 234 F.3d 1072, 1077 (9th Cir. 2000), citing Williams v. Taylor, 529 U.S. 362, 405-07, 120 S. Ct. 1495, 1519-20 (2000)).  See also Frantz, 513 F.3d at 1010-11 & n.12.  However, such a conclusion does not ipso facto warrant granting of the writ.  See Frantz, 513 F.3d at 1016.  Even if the state court's decision was contrary to federal law, Petitioner's constitutional rights were not violated because his counsel's act in entering into the stipulations did not deprive him of an "adversarial" proceeding. Accordingly, Petitioner was not deprived of his right to the effective assistance of counsel because his counsel's performance was not deficient as alleged.

Petitioner's federal habeas claim is stated as one that his right to a fair trial was violated because his counsel waived his right to challenge evidence, i.e., to "confront his accusers," over his objections.  This type of Sixth Amendment claim, as compared to one asserting that counsel was ineffective for making prejudicial blunders, is one generally characterized by the federal courts as a "Brookhart" claim.  See, e.g., United States v. Plitman, 194 F.3d 59, 63 n.2 (2d Cir. 1999), citing Brookhart v. Janis, 384 U.S. 1, 86 S. Ct. 1245 (1966) (holding a criminal defendant has a right to plead not guilty which may

1    not be waived by his counsel). [8]

2              The Supreme Court concluded in <u>Brookhart</u> that the

3    petitioner's trial counsel's stipulation not to challenge the

4    prosecution's *prima facie* case of guilt with the defense's own

5    evidence was "not merely a matter of trial tactics or strategy,

6    but implicated fundamental due process concerns." <u>Id.</u>[9]

7              Criminal defendants possess two types of
              constitutional rights, and a different waiver
8              standard applies to each. [] The first

9    ────────────────

10        [8] In the context of a direct appeal, at least one federal
     Circuit Court of Appeals concluded the reasoning of federal habeas
11   cases analyzing defense counsel's waiver of rights to confrontation
     are distinguishable from the right established by <u>Brookhart</u>, i.e.,
12   that of a defendant to challenge the states' case against him, the
     specific right Petitioner asserts. <u>See</u> <u>United States v. Stephens</u>, 609
     F.2d 230, 232-33 & n.2 (5th Cir. 1980) (distinguishing the
13   constitutional right "of the defendant in a criminal case to plead not
     guilty" from the rule that counsel in a criminal case may waive his
14   client's Sixth Amendment right of confrontation by stipulating to the
     admission of evidence, so long as the defendant does not dissent from
15   his attorney's decision, in the direct appeal of a case wherein
     defense counsel, with his clients' consent to the stipulations, waived
16   his client's confrontation rights).

17        [9] In <u>Brookhart</u>, the defendant's counsel agreed not to contest
     the state's case or cross-examine its witnesses, but only demanded
18   that the prosecution provide sufficient evidence to make out a prima
     facie case on the elements of each crime. <u>See</u> 384 U.S. at 2, 86 S.
19   Ct. at 1246. Concluding the concession was essentially a plea of nolo
     contendere, the Supreme Court framed the issue as "whether counsel has
20   power to enter a plea which is inconsistent with his client's
     expressed desire and thereby waive his client's constitutional right
21   to plead not guilty and have a trial in which he can confront and
     cross-examine the witnesses against him." 384 U.S. at 7, 86 S. Ct.
22   at 1246. The Supreme Court held that "counsel for defendant can[not]
     override his client's desire expressed in open court to plead not
23   guilty and enter in the name of his client another plea-whatever the
     label-which would shut off the defendant's constitutional right to
24   confront and cross-examine the witnesses against him which he would
     have an opportunity to do under a plea of not guilty." 384 U.S. at
25   7-8, 86 S. Ct. at 1248-49. Because the <u>Brookhart</u> petitioner "neither
     personally waived his right nor acquiesced in his lawyer's attempted
26   waiver," the Supreme Court reversed the judgment. 384 U.S. at 8, 86
     S. Ct. at 1249.

27

28                              -17-

category involves rights that defense counsel
may waive on behalf of defendant because they
concern strategic and tactical matters such
as selective introduction of evidence,
stipulations, objections, and pre-trial
motions. [] The second category involves
rights that only defendant himself may waive
because they are "personal" and include
matters like pleading guilty, waiving a jury
trial, pursuing an appeal, and deciding to
testify. []

Plitman, 194 F.3d at 63 (joining the majority of circuit courts
and holding defense counsel may waive a defendant's right to
confront witnesses where the decision is one of trial tactics or
sound trial strategy).  See also Brown v. Artuz, 124 F.3d 73, 77
(2d Cir. 1997) (holding defense counsel may waive the
defendant's rights if a stipulation involves trial strategy and
tactics).

Decisions that may be made without the defendant's
consent, without violating the defendant's right to due process,
"primarily involve trial strategy and tactics," such as "what
evidence should be introduced, what stipulations should be made,
what objections should be raised, and what pre-trial motions
should be filed." United States v. Teague, 953 F.2d 1525, 1531
(11th Cir. 1992).  However, "an attorney may not stipulate to
facts which amount to the 'functional equivalent' of a guilty
plea." Wiley v. Sowders, 647 F.2d 642, 649 (6th Cir. 1981).

**The undersigned concludes the stipulations at issue in
this matter were not the functional equivalent of a guilty plea.**

After reviewing the record in this matter, the
undersigned concludes that Petitioner's constitutional rights
were not violated because the subject stipulations were not the

functional equivalent of a guilty plea.

In _Florida v. Nixon_, a state habeas case involving an ineffective assistance of counsel claim, the Supreme Court concluded the petitioner's counsel had not entered the functional equivalent of a guilty plea because, although counsel had admitted the defendant had killed the victim, counsel proceeded to trial on his client's culpability and cross-examined witnesses and challenged evidence.  _See_ 543 U.S. at 188, 125 S. Ct. at 561.  The Supreme Court further noted that counsel's admissions did not waive his client's right to an appeal, as distinguished from the entry of a guilty plea.  _Id._ The holding of _Nixon_ supports the conclusion that Petitioner's rights were not violated, as Petitioner's counsel proceeded to trial asserting his client's lack of criminal intent. Additionally, Petitioner's counsel did not waive his right to an appeal, as distinguished from the entry of a guilty plea.

In _Boykin v. Alabama_, the United States Supreme Court stated that a guilty plea is functionally entered when "nothing remains but to give judgment and determine the punishment."  395 U.S. 238, 242, 89 S. Ct. 1709, 1711-12 (1969).  Applying this statement, the Eighth Circuit Court of Appeals concluded in _Cox v. Hutto_ that the state trial court had violated the petitioner's constitutional rights by failing to ascertain that the petitioner had voluntarily entered into a stipulation concerning his prior convictions.  _See_ 589 F.2d 394, 396 (1979). Unlike the defendant in _Cox_, Petitioner's counsel did not waive his right to have the state prove the fact of his prior offenses

-19-

or to rebut the state's evidence.

In <u>Adams v. Peterson</u>, 968 F.2d 835, 839 (9th Cir. 1992), the defendant had stipulated that certain facts were supported beyond a reasonable doubt by the evidence that the state possessed and would present at trial. The Ninth Circuit Court of Appeals concluded:

> A stipulation to facts from which a judge or jury may infer guilt is simply not the same as a stipulation to guilt, or a guilty plea. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."

<u>Id.</u>, <u>quoting</u> <u>Boykin</u>, 395 U.S. at 242, 89 S. Ct. at 1711. In Petitioner's case, subsequent to the stipulations there were more elements to the charged crime which proceeded to resolution by the fact-finder.

In <u>Armontrout</u>, a decision issued by the Eighth Circuit Court of Appeals, the court rejected the petitioner's contention that his right to due process was violated by his counsel's stipulation as to evidence without his consent. <u>See</u> <u>Smith v. Armontrout</u>, 888 F.2d 530, 536 n.6 (1989) (noting, *inter alia*, the record was unclear as to whether the petitioner had consented and that it was not "necessary for this consent to appear explicitly in the record. The letter was extremely damaging, but the stipulation was not the equivalent of a plea of guilty...."). As in this matter, rather than contest the admissibility and existence of the document at issue, counsel in <u>Armontrout</u> focused on his client's intent in creating the

document.  See 888 F.2d at 536.  The decision in Armontrout supports the conclusion that the stipulations at issue in this matter were not the equivalent of a guilty plea.

The precise issue presented in this case has not been addressed by the United States Supreme Court.  In Nixon, a 2004 ineffective assistance of counsel case, the Supreme Court expressly reserved the question of whether a concession of guilt in a noncapital trial is a strategic decision requiring the defendant's consent.  543 U.S. at 190, 125 S. Ct. at 562.  There is no United States Supreme Court opinion which states that counsel may not waive his client's right to confront witnesses by entering into a stipulation with regard to evidence, over his client's objections, when the stipulations are not an admission of guilt.

The federal Circuit Courts of Appeal have held that criminal trial counsel may waive their client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, stating in dicta in these opinions that counsel may do so provided the defendant does not dissent from his attorney's decision and it can be said that the decision was a legitimate trial tactic or part of a prudent trial strategy.  See Wilson, 345 F.2d at 287-88 (holding counsel could waive his client's confrontation rights in the face of his client's silence); Almanzar v. Maloney, 281 F.3d 300, 305 (1st Cir. 2002) (making this statement in the context of a case wherein counsel and the defendant agreed regarding the stipulations); Hawkins v. Hannigan, 185 F.3d 1146, 1154-56 (10th Cir. 1999) (same);

-21-

1  Cruzado v. Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954)

2  (holding the defendant had waived any objection by agreeing to

3  the stipulations).  But see Clemmons v. Delo, 124 F.3d 944, 956

4  (8th Cir. 1997) (stating that "the law seems to be clear that

5  the right of confrontation is personal and fundamental and

6  cannot be waived by counsel").[10]

7      Although the language in these cases regarding the

8  defendant's consent to the stipulations may provide support for

9  the proposition that defense counsel's waiver of the defendant's

10  right to confrontation over the defendant's objections violates

11  their constitutional rights, none of these cases, singly or

12  taken as a whole, are "clearly established federal law" for the

13  purposes of section 2254.[11]

14      In Wilson, a 1965 Ninth Circuit pre-AEDPA case, the

15  court concluded the right of the accused to cross-examine and

16

17          [10]  In Plitman, the Second Circuit stated:
        The Eighth Circuit in Clemmons faced an entirely
18      different set of facts in which neither defendant
        nor his counsel agreed to waive defendant's right
19      to confrontation.  See Clemmons, 124 F.3d at 956.
        We decline to follow the court's statement in
20      dicta that counsel's waiver nonetheless would
        have been ineffective...
21  194 F.3d at 63.

22          [11] The undersigned notes the Tenth Circuit Court of Appeals
23  reached the same conclusion using a different approach in the context
    of a direct appeal in United States v. Aptt, 354 F.3d 1269, 1284 (10th
    Cir. 2004), citing Bullock v. Carver, 297 F.3d 1036, 1058 (10th Cir.
24  2002) ("[B]ecause [the] ineffective assistance of counsel claims fail,
    his Confrontation Clause argument [based on hearsay to which counsel
25  did not object] also fails."); Wilson v. Gray, 345 F.2d 282, 287 n.7
    (9th Cir. 1965) (concluding "a reviewing court can not find a denial
26  of the constitutional right to cross-examination merely on the basis
    of an error in trial tactics unless the error is so gross as to
27  constitute a denial of adequate and effective assistance of counsel").

28                              -22-

confront prosecution witnesses in a state criminal trial was an essential ingredient of a fair trial, but the court did not agree that in all cases the waiver of this right must be made by the accused personally rather than by his counsel, stating: "It has been consistently held that the accused may waive his right to cross examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy." 345 F.2d at 287. However, the Wilson court did not confront a situation similar to the instant matter wherein Petitioner objected to the stipulation.

In Plitman, the defendant challenged his counsel's waiver of his confrontation rights.  The "waiver" involved was the defendant's stipulation to evidence through counsel.  The court stated:

> We have not decided specifically whether and under what circumstances defense counsel may waive a defendant's right to confrontation. Our opinion in Brown v. Artuz suggests that defense counsel may make the waiver where a stipulation involves trial strategy and tactics, even though the stipulation impacts on a defendant's constitutional rights. [] Other circuit courts of appeals have held that "counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, *so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.*" United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980)...

194 F.3d at 63 (emphasis added).

-23-

The *Plitman* court cited the Tenth Circuit Court of Appeals' decision in *Hawkins v. Hannigan*, 185 F.3d 1146, 1154-56 (10th Cir. 1999), holding defense counsel could stipulate to the admission of hearsay evidence.  The situation presented to the Tenth Circuit was similar to *Wilson*, i.e., in *Hawkins* there was no indication that the defendant disagreed with or objected to his counsel's decision.  *See* 185 F.3d at 1154-55.  However, the holding in *Plitman*, subsequent to *Hawkins* and *Wilson*, indicates that the waiver may be made by counsel for the defendant as a matter of trial strategy.  Accordingly, because a defendant does not have a right to dictate trial strategy, Petitioner's objection to counsel's waiver does not take the matter outside the realm of firmly established federal law.

Petitioner's constitutional rights were not violated by his counsel's entry into stipulations because the stipulations were not the equivalent of Petitioner's personal right to plead not guilty and confront the witnesses against him. Additionally, to the extent the undersigned has improperly read the "murky" waters regarding the appropriate analysis, *see Frantz*, 513 F.3d at 1011, the undersigned also concludes the state courts' resolution of Petitioner's claims with regard to the stipulations were not an objectively unreasonable application of federal law in light of the facts presented.  It was not unreasonable for the state courts to determine the stipulations were not an admission of guilt and, accordingly, that Petitioner's counsel's performance was not deficient because he entered into the stipulations.

-24-

**IV Conclusion**

The stipulations entered into by Petitioner's trial counsel were not the "functional equivalent" of a guilty plea, and represented trial strategy by counsel. Petitioner's constitutional rights to an adversarial proceeding and to the effective assistance of counsel were not violated and, accordingly, Petitioner is not entitled to federal habeas relief. Furthermore, the United States Supreme Court has not addressed whether counsel's entry of stipulations over his client's objection violates the client's constitutional rights. Accordingly, the Arizona Superior Court's adjudication of the issue cannot be contrary to, or an unreasonable application of, clearly established federal law.

**IT IS THEREFORE AGAIN RECOMMENDED** that this claim in Mr. Allerdice's Petition for Writ of Habeas Corpus be **denied.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to

the objections.   Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.   See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).   Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 7th day of April, 2008.


_____
Mark E. Aspey
United States Magistrate Judge

-26-