**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Andrew J. Allerdice,<br><br>    Petitioner,<br><br>vs.<br><br>Dora B. Schriro, et al.,<br><br>    Respondent. | No. CV-07-8049-PCT-NVW<br><br>**ORDER** |

Petitioner Andrew J. Allerdice ("Allerdice") brings this petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. #1) to challenge his conviction on various counts of fraudulent schemes, forgery, and theft. United States Magistrate Judge Mark E. Aspey issued a Report and Recommendation ("the First R&R") (Doc. # 15), which the court accepted in part in a previous order. (Doc. # 20). Magistrate Judge Aspey has now issued a Second Report and Recommendation ("the Second R&R") (Doc. # 22) recommending that the court deny the petition. Allerdice filed a timely objection on August 8, 2008 (Doc. # 38). As explained below, the court agrees with the Second R&R, and it will be accepted within the meaning of Rule 72(b), Fed. R. Civ. P. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

### I. Factual Background

Allerdice was convicted in Mohave County Superior Court on one count of fraudulent schemes and artifices, eight counts of forgery, and one count of theft. Around the time that trial began, Allerdice's counsel stipulated to the admissibility of more than thirty checks and financial records. Allerdice was consulted about the stipulations, and he expressly objected to them in open court. Some of the stipulations extended to the fact that Allerdice had presented a particular check at a particular bank for cash or deposit, or at a particular store for payment. The stipulations also included the fact that Allerdice had presented checks drafted on a business bank account that the bank said did not exist. The trial court allowed the stipulations.

The stipulations focused the case on one issue: whether Allerdice had the requisite intent to commit the crimes charged. *See* A.R.S. § 13-2001 and 2002(A) (forgery); A.R.S. § 13-2310(A) (fraudulent schemes); A.R.S. § 13-1801 and -1802 (theft). According to the defense, Allerdice had no knowledge that the checks he presented were forged. Allerdice was a fledgling used car dealer with little experience in business, and, as his counsel told the jury, "not the brightest bulb in the box." He claimed that previously he had worked for another used car dealer named Paul Pisciotta. Pisciotta's name is the name signed on each of the bogus checks. Allerdice's counsel argued from these facts that there was a reasonable doubt as to whether Pisciotta, rather than Allerdice, forged the checks. If that were the case, then perhaps Pisciotta gave the checks to a naive Allerdice, who passed them along to third parties without any knowledge that they were forged. Pisciotta's subsequent felony conviction in a federal court added plausibility to the argument that he carried out such a crime.

Other evidence belied the defense theory. It showed that Allerdice had opened three bank accounts for himself using three different social security numbers. The checks at issue were drawn on a fictitious business account, and the number on this account was only one digit off from an actual account number Allerdice had held at the same bank. Allerdice admitted that he had no documentation to substantiate his asserted business transactions.

1 Arizona's forgery statute provides that an intent to defraud may be inferred from the 2 possession of five or more forged instruments. A.R.S. § 13-2002(B). Accordingly, the trial 3 judge instructed the jury as follows: "The possession of five or more forged instruments 4 within the time frame of this case may give rise to a permissive inference that the instrument 5 was possessed with an intent to defraud. It is for the jury to decide beyond a reasonable 6 doubt that this inference has been supported by the evidence presented in this case."

7 In his objection to the Second R&R, Allerdice contends that his attorney's stipulations 8 violated his Sixth Amendment right to confront the witnesses against him and to decide for 9 himself whether to plead guilty.

10 **II. Legal Standard**

11 The court has considered the objections and reviewed the Report and 12 Recommendation de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that the 13 court must make a de novo determination of those portions of the Report and 14 Recommendation to which specific objections are made). Insofar as the Magistrate Judge 15 also ruled on any non-dispositive matters, error may not be assigned to any defect in those 16 rulings to the extent that an aggrieved party did not file a timely objection. Fed. R. Civ. P. 17 72(a) ("A party may serve and file objections to the order within 10 days after being served 18 with a copy. A party may not assign as error a defect in the order not timely objected to."). 19 The absence of a timely objection precludes later assignment of error in this court or in any 20 higher court of the non-dispositive rulings of a magistrate judge. *Simpson v. Lear Astronics* 21 *Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996); *Philipps ex rel. Estates of Byrd*, 307 F.3d 1206, 22 1210 (9th Cir. 2002).

23 To prevail on a habeas corpus petition under AEDPA, a petitioner must demonstrate 24 that the state court's decision on the merits was contrary to, or involved an unreasonable 25 application of, clearly established federal law under United States Supreme Court precedent. 26 *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003). Where the state court decides an issue that 27 is an open question under the Supreme Court's jurisprudence, "it cannot be said that the state 28 court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 127

S. Ct. 649, 653 (2006) (quoting § 2254). If the state court decision was an unreasonable application of clearly established federal law, then the court must determine whether the petitioner's constitutional rights were violated without deference to the state court decision. *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008).

### III. Analysis

A criminal defendant's Sixth Amendment right to counsel is violated, and no showing of prejudice is needed, where defense counsel fails utterly to test the prosecution's case. *See Bell v. Cone*, 535 U.S. 685, 696-97 (2002); *United States v. Cronic*, 466 U.S. 648, 659 (1984). In effect, the state courts denied post-conviction relief under the right-to-counsel test. Magistrate Judge Aspey agreed with this result but not this approach. In both R&R's, he concluded that the case was better analyzed in terms of the Confrontation Clause and not the right to counsel, citing *Brookhart v. Janis*, 384 U.S. 1 (1966). Thus, the state court's reliance on the *Cronic* doctrine constituted an unreasonable application of clearly established Supreme Court precedent, and the R&R's recommended no special deference to the state court's holding under AEDPA. *Frantz*, 533 F.3d at 735.

This court will accept Magistrate Judge Aspey's conclusion that no constitutional violation has been shown. Thus, it does not matter whether it was unreasonable for the state court to analyze the case under *Cronic*. The actions of Allerdice's counsel pass muster under both *Cronic* and *Brookhart*, whether or not deference is granted to the state court decision. Practically speaking, the two doctrines run together in a case such as this. An attorney's wholesale waiver of confrontation rights also implicates the right to effective assistance of counsel. Both *Cronic* and *Brookhart* draw the line in a similar manner. *Compare Cronic*, 466 U.S. at 659 (presuming prejudice where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"), *with Brookhart*, 384 U.S. at 4-7 (attorney may not, without client consent, knowingly consent to a proceeding "which was the equivalent of a guilty plea"). Indeed, the Supreme Court has applied these cases together in recent years. *See Florida v. Nixon*, 543 U.S. 175, 188-91 (2004) (analyzing stipulations of counsel under both standards). A closer look at their application follows.

It is a cardinal rule of attorney–client relations that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued." Model Rules of Prof'l Conduct R. 1.2(a). In the case of a criminal defendant, "the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." *Id.* The scheme of these principles reaches into the Constitutional context. "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation does not require counsel to obtain the defendant's consent to every tactical decision." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks and citation omitted) (interpreting the Sixth Amendment).

The right to effective assistance of counsel, however, places an outer limit on the attorney's decision-making power. A decision not "to subject the prosecution's case to meaningful adversarial testing" constitutes "a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659. Similarly, under *Brookhart*, the Confrontation Clause bestows some rights that are only waivable by the defendant, such as the right to a trial with cross-examination. 384 U.S. at 4. The defendant also retains the right to decide whether to plead guilty—another waiver of confrontation rights—and counsel cannot consent to a proceeding that is the "practical equivalent" of a guilty plea without client authorization. *Id.* at 7; *Nixon*, 543 U.S. at 187-89.

*Brookhart*'s wholesale waiver of cross-examination rights must be distinguished from the waiver here. While Allerdice's counsel waived cross-examination as to the state's witnesses, he did not waive rights of cross-examination altogether. Allerdice's counsel extensively cross-examined the witnesses who were called. *Cf. Brookhart*, 384 U.S. at 4, 7 (cross-examination waived as to all witnesses). Moreover, he derived a tactical advantage for his client in shortening the state's witness list. The stipulations by Allerdice's counsel were not the functional equivalent of a guilty plea, nor did they deprive the proceedings of their adversarial character.

1  There was strong evidence suggesting that Allerdice had possessed and deposited the checks in question. The checks were made out to Allerdice or his business. They bore personal details such as his driver's license number. They also bore a fictitious business account number that differed in only one digit from the number of Allerdice's former personal account. The state was prepared to call numerous witnesses to testify that Allerdice had presented the checks for payment in various places. Under the circumstances, counsel could reasonably conclude that there was little to gain from a time-consuming parade of witnesses who would place the defendant at the crime scenes, forged checks in hand. In fact, disputing those occurrences could have undermined what counsel must have determined was the best theory for the defense: that Allerdice came into possession of these checks and used them without any knowledge of wrongdoing. It would run the risk of insult to tell the jury, on the one hand, that Allerdice had never possessed the checks and then to tell them, on the other hand, that Allerdice possessed the checks without knowledge of fraud. The danger of losing the jury's trust could reasonably be seen to outweigh the benefits of cross-examination. It was also reasonable for counsel to avoid creating the impression that he was wasting the jury's time on facts that were not disputable unless Allerdice took the stand, which he elected not to. "[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade." *See Nixon*, 543 U.S. at 192 (citation and internal quotation marks omitted); *accord United States v. Thomas*, 417 F.3d 1053, 1056-59 (9th Cir. 2005); *Wilson v. Gray*, 345 F.2d 282, 288-90 (9th Cir. 1965).

It is of no moment that in this case, Allerdice objected to his counsel's actions. *See Nixon*, 543 U.S. at 187. "The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). "Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision to forgo cross-examination . . . ." *Id.*; *cf. Thomas*, 417 F.3d at 1056 (assuming without deciding that an outright concession of guilt

on some, but not all, charges without client consent is constitutionally deficient).[1] The stipulations did not give rise to a presumption of prejudice, nor were they prejudicial in this case. *See Thomas*, 417 F.3d at 1056. They enabled counsel to mount a reasonable defense under the circumstances.

Nor can Allerdice claim that the proceedings lacked an adversarial character because the statutory jury instructions permitted a finding of intent based on the possession of five checks. The presumption inherent in this instruction was not mandatory, but permissive; it "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314-15. Reason and common sense would justify a finding that the possessor of several forged checks also possesses an intent to commit fraud.

This Court appointed counsel for Allerdice on his objections to the second Report and Recommendation and to assist the Court with full adversarial presentation of this case. Even with the benefit of that thorough representation, it is clear that there is nothing more to this case than a criminal defendant's attempted take-over of his trial for no strategic benefit, at the cost of defeating counsel's strategy. The judicial effort expended on this case does not alone make this case debatable, and in the view of this Court there is nothing judicially debatable here. Having served well and there being no further need for his services, CJA counsel will be discharged at this time.

IT IS THEREFORE ORDERED that attorney David Eisenberg is discharged and terminated as Civil Justice Act counsel for Petitioner Allerdice.

---

[1] An earlier Ninth Circuit case states that certain defense stipulations "made in the presence of appellee and without objection by him constituted no failure of due process." *Wilson*, 345 F.2d at 282 (9th Cir. 1965). *Wilson* did not hold that a client's objection would change the outcome in circumstances such as these, where no prejudice was shown.

- 7 -

1    IT IS FURTHER ORDERED that the Report and Recommendation of the Magistrate
2  Judge (Doc. # 22) is accepted.
3    IT IS FURTHER ORDERED that the Clerk of the Court enter judgment denying
4  Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. # 1).
5  The Clerk shall terminate this action.
6    DATED: October 7, 2008.

_____
Neil V. Wake
United States District Judge